UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| SCOTT GRAY,<br><br>           Plaintiff,<br>     v.<br><br>COMCAST'S LONG TERM DISABILITY INSURANCE PLAN,<br><br>           Defendant.<br>_____/ | No. C 09-03810 MEJ<br><br>**ORDER RE PLAINTIFF'S MOTION FOR JUDGMENT; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(DKT. ## 17, 18)** |

## I. INTRODUCTION

Before the Court are Plaintiff Scott Gray's ("Plaintiff") motion for judgment (Dkt. #17), and Defendant Comcast's Long Term Disability Insurance Plan's ("the Plan" or "Defendant") motion for summary judgment (Dkt. #18). After consideration of the parties' papers and oral arguments, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II. BACKGROUND

The following facts are taken from the parties' joint proposed findings of facts and conclusions of law ("JPF"), which cite to the Administrative Record ("AR"), plan documents, and declarations of counsel. (Dkt. #39.) Plaintiff was an Associate Local Sales Account Representative for Comcast Corporation ("Comcast") in Sacramento, California. Plaintiff began working for Comcast on October 6, 2003, and his last day of work was January 9, 2006. He then applied for disability benefits under the Plan, claiming he was unable to work initially due to nausea, fatigue, bronchitis, and thereafter due to bipolar disorder. In January 2006, Plaintiff was diagnosed with AIDS.

The Plan is a comprehensive employee welfare benefit plan which provides employee

benefits to eligible Comcast employees, including long- and short-term disability benefits. Comcast is the Plan sponsor and administrator. The short-term disability ("STD") portion of the Plan is self-funded, and Liberty Life Assurance Company of Boston ("Liberty") acts as the third-party claim administrator for STD claims. The long-term disability ("LTD") portion of the Plan is funded by a group disability income policy issue by Liberty to Comcast, the Plan sponsor. Liberty is both the insurer and claim administrator for the LTD plan.

Plaintiff was approved for and subsequently received STD benefits from January 2006 until April 28, 2006, when his benefits were terminated due to Liberty's decision that he was no longer disabled. On February 28, 2007, Plaintiff filed suit against the plan to recover benefits which he claimed were wrongfully terminated ("Prior Action"). On January 23, 2008, after filing the Prior Action, Plaintiff made a claim for LTD benefits. In April 2008, Liberty agreed to pay the LTD claim under reservation of rights while completing its evaluation of Plaintiff's claim. On May 30, 2008, Liberty approved Plaintiff's claim subject to a two-year mental illness provision, and Plaintiff was paid two years of LTD benefits. Plaintiff disputed the application of the mental illness limitation and, after further evaluation, Liberty approved LTD benefits beyond the two-year limitation, in October 2008. Plaintiff is still in approved status and is currently receiving monthly LTD benefits.

The Prior Action was settled in January 2009, and the settlement agreement was executed on February 13, 2009. The case settled for $11,203.17 as to all claims, and the settlement was expressly limited to all issues regarding the STD component of the Plan; all issues related to the LTD benefits were left open. The Prior Action was dismissed on March 23, 2009.

Regarding LTD coverage, the Liberty policy provides in part: "When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provision of this policy." (McGee Decl. Ex. B[1], Policy 23, Dkt. #20.)

---

[1] Exhibit B to the McGee declaration is comprised of the Liberty Policy, and will hereinafter be referred to as "Policy".

2

To determine the amount of the Monthly Benefit:

Take the lesser of:

1. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benfits;

2. 70% of the Covered Person's Basic Monthly Earnings less Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy); or

3. the Maximum Monthly Benefit shown in the Schedule of Benefits.

*Id.* Plaintiff was a Class 4 Commissioned Employee, with a benefit percentage of 60% in the Schedule of Benefits, a minimum monthly benefit of $100, and a maximum monthly benefit of $10,000. (JPF ¶ 18.)

The Policy defines "Basic Monthly Earnings" for Class 4 Commissioned Employees as follows: "Your LTD benefit is determined based on your monthly *pre-disability income*. How income is defined depends on whether you are a regular or commissioned full-time employee. For purposes of the LTD benefit," the monthly income for commissioned employees is "[y]our Annual Benefits Base Rate (ABBR) divided by 12. Your ABBR is the total sum or your current year's salary and prior year's commissions. If you are new to the commissioned position, the initial ABBR is the incentive target rate included in your employment offer letter." (McGee Decl. Ex. C[2], SPD 10, Dkt. #20; Policy 8.)  The SPD further provides that the "LTD benefit will be reduced by other sources of income" such as disability or retirement benefits. *Id.*

The SPD identifies Comcast as the Plan Administrator and provides:

> Administration of the plans is the responsibility of the Plan Administrator. With respect to certain benefits, the Claims Administrators determine eligibility for benefits in accordance with the official plan document(s).
>
> The Plan Administrator has the exclusive right, power and authority in its sole and absolute discretion to:
>
> • Construe and interpret the provisions of the plans
> • Make factual determinations

---

[2]Exhibit C to the McGee declaration is the Comcast Summary Plan Description and will hereinafter be referred to as "SPD".

3

- Take all actions and decide all questions of eligibility for benefits
- Determine the amount of such benefits
- Resolve issues arising in the administration, interpretation, and/or application of the plans
- Correct any defects
- Reconcile and/or clarify any inconsistencies or ambiguities, and
- Supply any omissions with respect to the plans.

(SPD 52.) Additionally, the Plan Administrator's "decisions on such matters are binding, final and conclusive. The Plan Administrator has reserved the right to delegate all or any portion of its discretionary authority . . . to a representative (for example, the Claims Administrator) and such representative's decisions on such matters are binding, final and conclusive." *Id.* Finally, "[a]ny interpretations or determinations made pursuant to such discretionary authority of the Plan Administrator or its representative will be upheld in judicial review unless it is shown that the interpretation or determination was an abuse of discretion." *Id.* at 52-53. Comcast delegated its discretionary authority to Liberty, as evidenced by the following Policy provision: "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." (Policy 45.)

When Plaintiff's STD claim was opened in 2006, Liberty requested that Comcast provide information regarding Plaintiff's ABBR for purposes of calculating the STD benefit. (JPF ¶ 22.) The Plan provides for STD benefits to be calculated similarly to monthly base pay, except they are based on a percentage of weekly base pay (where ABBR is divided by 52 instead of 12). When Liberty obtained information from Comcast regarding Plaintiff's ABBR in 2006, Comcast reported Plaintiff's ABBR effective January 15, 2006 to be $93,380.80; Liberty relied upon this number in making STD benefit payments.[3]

However, when Plaintiff submitted his LTD claim in January 2008, Liberty received different and conflicting information from Comcast regarding Plaintiff's salary. The salary amount provided on January 25, 2008 was $32,990.90 for the effective date of October 23, 2005. Because

---

[3]*See* Batten memorandum, *supra*, for further explanation.

4

of the difference in amount provided, Liberty requested that Comcast provide the information as of Plaintiff's last date of work. On January 29, 2008, Phyllis Price-Jones of Comcast's Benefits Department responded to Liberty's request, stating that Plaintiff's "Annual Rate on 1/15/06 was $32,399.90." On that same day, Liberty responded that it needed to calculate LTD benefits using the date of disability of January 10, 2006 and the last date of work as January 9, 2006. In the email, Liberty provided the Plan definition for "Basic Monthly Earnings" laid out above, and pointed out the discrepancy of roughly $60,000 from the information in the file regarding the monthly earnings used to calculate Plaintiff's STD benefits. Price-Jones responded by email "[t]he employee's ABBR is $93,380.80." That same day, Plaintiff's disability case manager sought clarification from Price-Jones of the correct ABBR "effective as of [Plaintiff's] last day worked of January 9, 2006." Price-Jones responded that the $93,380.80 "ABBR rate was effective 1/15/06." Once more on that day, Liberty attempted to obtain the correct information and specified that the relevant date for the ABBR calculation was "as of January 9, 2006[,]" Plaintiff's last day worked. Price-Jones then responded "I hope I get it right this time . . . . The ABBR between 3/4/2004 and 1/14/2006 was $32,390.90." Accordingly, Liberty began making LTD payments on April 29, 2008 calculating benefits based on an ABBR of $32,399.90, making Plaintiff's gross monthly benefit $1,619.99. As Plaintiff was also receiving monthly social security benefits of $1,048, which is considered other income, the gross monthly LTD benefit was reduced.

On June 10, 2008, Plaintiff's counsel, Jim Mellen, spoke with Plaintiff's disability case manager. During the call, Mellen questioned the earnings being used to calculate the monthly LTD benefit and was informed that Liberty had addressed the correct ABBR with Comcast in January 2008 and that it was $32,399.90. Following Mellen's call, Liberty again sought clarification regarding Plaintiff's ABBR from Comcast. Subsequently, Liberty received a memorandum dated September 23, 2008 that Patrick Batten, Senior Director of Compensation and Benefits, West Division, had prepared for Heidi Dunston, Senior Counsel at Comcast. The memo clarified that the "correct ABBR rate for Scott Gray for 2006 based on the ABBR Policy should have been $38,761.70." (AR 37.) In the memorandum, Batten explains:

5

> The calculation of ABBR is based on an employee's base rate of pay and prior year commissions and is re-calculated annually on or about March 1 each year.
>
> > Example: An ABBR eligible employee with a base rate of pay of $30,000 as of March 1st and prior year commissions of $45,000 would have an ABBR for the current year of $75,000.
>
> In or about March 2006, the West Division (including California) discussed how to calculate ABBR when an employee has been on an extended Leave of Absence (LOA).  An employee on a [sic] LOA is not earning commissions.  Since an employee's ABBR is based, in part, on the commissions earned during the prior year, an employee who has been out on a leave of absence for a significant period of time will have an ABBR rate closely approaching his/her base salary rate (without commission).  In order to compensate for the extended LOA period, the West Division Benefits and Compensation Team recommended calculating the amount of time the employee had worked during the prior year (not on LOA) and annualizing commission earned.  This annualized commission would then be used in the ABBR calculation.  This was proposed to Comcast Headquarters Payroll and the recommendation wasn't approved.  Prior to receiving formal approval from Headquarters, I believe the Central California Region used this alternate calculation in determining ABBR for certain employees, including Scott Gray.  As a result, Mr. Gray's unused flexible time off, floating holidays, earned but unused vacations and Company paid holidays for 2005 and 2006 were paid out at the higher rate of $93,380.80 (this rate was calculated using more then [sic] the prior year's commission).

(AR 36-37.)  Comcast also provided documentation to show that Plaintiff's base salary as of January 9, 2006 was $32,399.80, and his commissions for the prior year amounted to $6,361.80; the total of which is $38,761.70.  (JPF ¶ 41.)

Based on the above information, Liberty concluded that Plaintiff's ABBR was $38,761.70.  On October 22, 2008, Plaintiff's case manager, Kelly Triano, wrote to Plaintiff's counsel to inform him that Liberty had approved LTD payments using an ABBR of $38,761.70 and that his net monthly benefit was $1,213.10.  This was calculated as follows: 70% of Plaintiff's "Basic Monthly Earnings" ($2,261.10) less "Other Income Benefits" ($1,048 month Social Security Disability Benefit).  Triano's letter also explained that the prior LTD benefits had been calculated using Plaintiff's salary, rather than his ABBR, and thus that an additional check in the amount of $8,906.64 was being sent to retroactively correct LTD payments.

On June 15, 2009, Plaintiff sent a letter to his case manager challenging the ABBR Liberty was using to calculate his LTD benefits.  (AR 25-26.)  Following receipt of this appeal letter, Plaintiff's claim was reviewed by "Manager I" Tammy Sullivan.  (AR 23-24.)  On July 8, 2009,

6

1  Sullivan sent a letter to Plaintiff's counsel informing him that Plaintiff's ABBR was correct and
2  enclosing a copy of Batten's memo. *Id.*
3        On August 19, 2009, Plaintiff filed the instant action for benefits due under the Employee
4  Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").  (Dkt. #1.)  On
5  October 14, 2010, Plaintiff filed his motion for judgment.  (Dkt. #17.)  Defendant filed an opposition
6  on October 28, 2010 (Dkt. #28), and on November 4, 2010, Plaintiff filed a reply (Dkt. #35).
7  Concurrently, on October 14, 2010, Defendant filed a motion for summary judgment.  (Dkt. #18.)
8  On October 28, 2010, Plaintiff filed an opposition (Dkt. #26), and Defendant filed a reply on
9  November 4, 2010 (Dkt. #33).  On November 18, 2010, the Court held a hearing on the matters.

## III. DISCUSSION

11       In his motion, Plaintiff maintains that the proper standard of review in this action is *de novo*,
12 because, he argues, Liberty delegated its discretion to interpret the Plan to Comcast.  (Pl.'s Mot.
13 16:18-17:12, Dkt. #17.)  Alternatively, Plaintiff contends that even under a deferential standard of
14 review, the Court should find that Liberty incorrectly denied him a higher amount of LTD benefits.
15 *Id.* at 19:11-12. Plaintiff contends that the Plan's language is ambiguous and that Liberty used the
16 ambiguity to limit its own exposure. *Id.* at 6:23-25.  Specifically, Plaintiff argues that the following
17 phrase used to calculate ABBR is ambiguous: "The Covered Person's ABBR is the total sum of their
18 current year's salary and prior year's commissions."  (Policy 8.)  Plaintiff maintains that "prior
19 year's commissions" could mean commissions earned in any year prior to disability where the
20 employee was on a leave of absence and did not earn commission in the year directly preceding the
21 disability.  (Pl.'s Mot. 12:5-10, Dkt. #17.)  Plaintiff contends that if "prior year" is defined as the
22 year before the disability occurred, there will be a disparate effect on commissioned employees such
23 as himself who earn a consistent salary but are forced to take an extended leave of absence affecting
24 their commissions. *Id.* at 12:19-13:5.
25       In its motion, Defendant contends that Liberty has discretion to interpret the Plan and
26 determine eligibility for benefits and thus that the more deferential abuse of discretion review is
27 appropriate.  (Def.'s Mot. 11:25-12:8, Dkt. #18.)  Defendant argues that its decision to award

1 benefits in the amount that it did is entitled to significant deference because the decision was based
2 upon a careful and detailed evaluation of the correct benefit calculation. *Id.* at 13:4-12. Defendant
3 maintains that it did not abuse its discretion in interpreting the Plan to arrive at the definition of
4 "prior year's commissions" and thus, that summary judgment in its favor is appropriate. *Id.* at
5 13:13-17, 14:19-22, 15:17-19.

### A.     Legal Standard

A beneficiary or plan participant may sue in federal court under ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Where a benefit plan confers upon the plan's administrator discretionary authority to make benefit determinations or to construe the terms of the plan, the district court will review the denial of benefits for an abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). In general, "where the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009) (citing *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.1999)).

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,* 410 F.3d 1173, 1178 (9th Cir. 2005). A finding is "clearly erroneous" when even though there is evidence to support it, the reviewing court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotations omitted). Thus, a court must "uphold the decision of an ERISA plan administrator if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Id.* (internal quotations omitted.) The claimant bears the burden of proving that the claim administrator abused its discretion in the denial of benefits. *Dowden v. Blue Cross & Blue Shield of Texas, Inc.*, 126 F.3d 641, 644 (5th

Cir. 1997).

**B.     Application to the Case at Bar**

       1.     <u>Whether Abuse of Discretion is the Proper Standard of Review</u>

Plaintiff first argues that the Court should review Defendant's benefit decision *de novo*, based on his contention that Liberty "failed to exercise its own discretion" and rather that it "relied on the interpretation and determinations of Comcast employees, rather than itself as the Plan and Claims Administrator, to determine the amount of benefits to confer upon Plaintiff." (Pl.'s Mot. 19:6-11, Dkt. #17.) Plaintiff argues that this fact is evidenced by the Batten memorandum as well as the other correspondence between Liberty and Comcast employees discussing the proper ABBR. *Id.*

In response, Defendant contends that Plaintiff has mis-characterized Plan documents; that Liberty did not delegate its authority when it sought compensation information from Plaintiff's employer. (Def.'s Opp'n 13:2-10, Dkt. #28.) Defendant maintains that Liberty was only seeking clarification to ensure that Plaintiff's benefit was calculated consistent with the terms of the Plan. *Id.* at 13:8-17.

The Court agrees with Defendant. The correspondence between Liberty and Comcast does not reveal that Comcast was interpreting the Plan; rather, it appears that Comcast was merely providing compensation amounts to Liberty at Liberty's request. (AR 45-49.) Nothing in the correspondence indicates that Comcast employees were tasked with interpreting the Plan or making benefit determinations. Liberty was attempting to get correct salary information for Plaintiff as of a certain date, nothing more. Accordingly, the Court finds that Plaintiff's argument misses the mark. *De novo* review is inappropriate here as the Plan documents clearly confer discretionary authority on Comcast, Comcast delegated authority to Liberty, and Liberty made the benefit determination following receipt of the correct salary information for Plaintiff. (SPD 52-53; Policy 45.) Thus, abuse of discretion is the proper standard of review.

       2.     <u>Whether Liberty's Conflict of Interest Affects the Standard of Review</u>

Under an abuse of discretion standard, the Court must determine how much deference to give Defendant's decision to deny Plaintiff additional LTD benefits, because the presence of a conflict of

9

interest can affect the standard of review. Abuse of discretion review shall be informed "by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record. This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). "[T]he precise standard in cases where the plan administrator is also burdened by a conflict of interest is only discernable by carefully considering the conflict of interest, including evidence outside of the administrative record that bears upon it." *Nolan v. Heald College*, 551 F.3d 1148, 1153-54 (9th Cir. 2009). This "necessarily entails a more complex application of the abuse of discretion standard. Specifically, a modicum of evidence in the record supporting the administrator's decision will not alone suffice in the face of such a conflict . . . ." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 626 (9th Cir. 2009).

If the facts and circumstances underlying the denial of benefits "indicate the conflict may have tainted the entire administrative decision-making process, the court should review the administrator's stated bases for its decision with enhanced skepticism: this is functionally equivalent to assigning greater weight to the conflict of interest as a factor in the overall analysis of whether an abuse of discretion occurred." *Id.* at 631. Similarly,

> A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie*, 458 F.3d at 968-69 (internal citations omitted). However, "[t]he level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id.* at 968.

If the conflict of interest improperly motivates the insurer's decision to deny benefits, the insurer will be found to have abused its discretion. *Montour*, 588 F.3d at 637. However, the existence of a conflict is only one factor to consider in determining whether there has been an abuse

1  of discretion by the administrator. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008).

2  In its motion, Defendant argues that Liberty's decision is entitled to significant deference
3  because there is no evidence that it acted with malicious intent or engaged in self-dealing or
4  parsimonious claim-handling practices. (Def.'s Mot. 13:4-12, Dkt. #18.) Defendant contends that
5  the Administrative Record shows that it conducted a careful objective review of the correct benefit
6  calculation, repeatedly seeking clarification from Comcast to ensure compliance with Plan terms,
7  that the investigation was unbiased, and that Liberty credited all of Plaintiff's evidence. *Id.*

8  Plaintiff, however, argues that Defendant's decision is entitled to less deference because
9  Liberty both evaluated and funded Plaintiff's claims. (Pl.'s Mot. 21:2-7, Dkt. #17.) Plaintiff
10 maintains that Liberty used the ambiguity of the phrase "prior year" to its advantage and thus saved
11 itself a substantial amount of money. *Id.* at 21:19-21. Plaintiff contends that Liberty's conflict is
12 further evidenced by its biased decision-making and inconsistency in determining the ABBR that
13 will be applied to employees seeking both STD and LTD benefits who have had a leave of absence
14 prior to their disability. *Id.* at 21:22-22:2. Finally, Plaintiff argues that the Plan is not applied
15 uniformly; new commissioned employees would be compensated at their base rate plus their
16 incentive target rate, rather than at their previous year commission,[4] which disparately affects
17 Plaintiff and other employees who take leaves of absence. *Id.* at 23:11-24.

18 In its reply, Defendant contends that Liberty's reliance on Comcast to provide Plaintiff's
19 ABBR calculation does not give rise to a conflict of interest. (Def.'s Opp'n 15:14-18, Dkt. #28.)
20 Defendant maintains that while Liberty's position as both the insurer and claims administrator would
21 generally give rise to a conflict, it does not in this instance; Defendant states that the calculation of
22 Plaintiff's ABBR is an administrative item that Liberty would not determine without the information
23 from employer and Plan Administrator — Comcast. *Id.* at 15:18-20. Defendant argues that

---

[4]"For purposes of the LTD benefit," the monthly income for commissioned employees is "[y]our Annual Benefits Base Rate (ABBR) divided by 12. Your ABBR is the total sum or your current year's salary and prior year's commissions. If you are new to the commissioned position, the initial ABBR is the incentive target rate included in your employment offer letter." (SPD 10; Policy 8.)

11

Comcast has no conflict because it does not fund LTD benefits and it does not determine eligibility; its only function was to provide accurate employment information. *Id.* at 15:21-23. Defendant maintains that Liberty is required to accept Comcast's ABBR calculation in determining benefits due. *Id.* at 15:25-27.

Here, the Court finds that, while Liberty both evaluated and funded Plaintiff's claim, it does not appear that the structural conflict of interest affected Liberty's ultimate determination. Of all the factors listed by the Ninth Circuit in *Abatie* — inconsistent reasons for denial, failure to adequately a claim, failure to credit a claimant's reliable evidence, repeated denial of benefits to deserving participants based upon incorrect interpretation of plan terms, decisions against the weight of evidence in the record — the only possible factor which Plaintiff could argue is present in the instant case would be a denial of his benefits based on an incorrect interpretation of plan terms. *Abatie*, 458 F.3d at 968-69. However, as discussed above, Liberty is the entity tasked with interpreting the plan, and as will be discussed below, Liberty's interpretation of the plan terms were reasonable. Accordingly, as the structural conflict of interest is "unaccompanied . . . by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history[,]" in determining whether Liberty abused its discretion, the Court will view the decision to deny additional benefits with a low level of skepticism. *Id.* at 968.

### 3. Whether Liberty Abused its Discretion

In his motion, Plaintiff argues that Liberty used the ambiguity of the Plan, specifically the phrase "prior year's commissions" to limit its own exposure, and thus that Defendant's conflict evidences its abuse of discretion. *Id.* at 13:16-17. Plaintiff contends that this ambiguity must be resolved against the drafter. (Pl.'s Mot. 24:10-15, Dkt. #17.) Based on this ambiguity, Plaintiff maintains that the Court must calculate his ABBR in a manner which accurately reflects the benefits he would have earned had he been well. *Id.* at 25:11-16. Plaintiff then offers four different methods by which the Court could calculate his ABBR: (1) Base Pay plus the prior 12 full months where Plaintiff made commission; (2) Base Pay plus annual incentive target rate of $75,000; (3) Base Pay plus an "annualized" commission amount based on the commission Plaintiff earned prior to his

12

disability; or (4) any other method the Court deems appropriate. *Id.* at 25:21-26:7.

In response, Defendant maintains that "prior year's commissions" is unambiguous in context. (Def.'s Opp'n 16:15-19, Dkt. #28.) Defendant implores the Court to interpret "prior year's commissions" in an ordinary and popular sense, taking into consideration the plain language of the Plan. *Id.* at 16:19-22. As to Plaintiff's offer of alternative benefit calculations, Defendant maintains that it is not the Court's or Plaintiff's place to rewrite the Plan. *Id.* at 19:23-20-5. Finally, Defendant contends that Liberty reasonably interpreted the language of the Plan and consistently applied its terms, meriting an award of summary judgment in its favor. (*Id.* at 21:11-16; Def.'s Reply 14:2-3, 14:26-28, Dkt. #33.)

"An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd*, 410 F.3d at 1178. "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith. Indeed, an administrator's decision is not arbitrary unless it is not grounded on any reasonable basis." *Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan*, 572 F.3d 727, 734-735 (9th Cir. 2009) (internal citations omitted). Here, Plaintiff's argument is that the Plan language was ambiguous.

In *Sznewajs*, the Ninth Circuit reviewed the district court's grant of summary judgment regarding the plan administrator's interpretation of plan language. *Sznewajs*, 572 F.3d at 730-31. There, the decedent was covered by the defendant's joint and survivor annuity plan, which would pay benefits either to the employee upon reaching the age of 55 or retiring, or to the spouse of a deceased employee, should the spouse outlive the employee. *Id.* at 731. When the decedent left his job in 2001, he was 53 years old and married to one woman; however, he married the plaintiff prior to his 55th birthday. *Id.* Upon the decedent's death, the plaintiff filed a claim with the plan which eventually reached the district court. *Id.* The question before the court was whether the former spouse or the plaintiff was entitled to the decedent's benefits, and the decision hinged on the

13

interpretation of the term "retirement" as used in the plan. *Id.* There were two possible interpretations of the plan language, and the Ninth Circuit found that the plan, when read as a whole, was ambiguous regarding the definition of the term. *Id.* at 735. However, the court noted that as long as the plan's interpretation of the ambiguous term was reasonable and made in good faith, there could be no abuse of discretion. *Id.*

Based on *Sznewajs*, the question before the Court here is two-fold: (1) is the phrase "prior year's commissions" ambiguous, and, if so (2) was Defendant's interpretation of the phrase unreasonable or in bad faith such that it abused its discretion?

Plaintiff argues that the ambiguity of the phrase is evidenced by the Batten memorandum, which explains that Comcast's benefits department calculated certain employees' ABBR using "the amount of time the employee had worked during the prior year (not on LOA) and annualizing commission earned." (AR 36-37.) In the memorandum, Batten explains that Comcast proposed the above formula in order to compensate an employee who had been on an extended leave of absence and had not received commission in the "prior year" worked, but that Comcast Headquarters Payroll did not approve the proposal. *Id.* Batten explained that "the Central California Region used this alternate calculation in determining ABBR for certain employees, including Scott Gray. As a result, Mr. Gray's [STD benefits] were paid out at the higher rate of $93,380.80 (this rate was calculated using more then [sic] the prior year's commission)." *Id.* at 37.

Defendant, in response, contends that "prior year's commissions", taken in context is unambiguous. (Def.'s Opp'n 16:15-22, Dkt. #28.) Defendant maintains that the proper interpretation of the disputed phrase, "their current salary and prior year's commissions" means the current salary as of the last day worked and commissions earned in the year prior to the last day worked. *Id.* at 17:9-14.

Courts should interpret terms in an ERISA plan "in an ordinary and popular sense as would a person of average intelligence and experience." *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007) (internal citations and quotations omitted). "More specifically, when disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear

14

intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." *Id.* (internal citations omitted).

Upon careful review of the Policy and SPD, the Court finds the phrase "prior year's commissions" to be unambiguous. Plaintiff's argument, as the Court understands it, is not really that the language is ambiguous; rather, it is that in light of the "experiment" wherein the Central California Region applied a different formula in calculating an employee's ABBR, Liberty's interpretation of the phrase is unfair. However unfair as it might seem to Plaintiff, Comcast had the opportunity to adopt the proposal but did not approve it. At the November 18, 2010 hearing, counsel for Defendant argued that the intent of Comcast is clear — Comcast Headquarters rejected attempts to change the application of plan language in favor of the traditional and plain meaning of the document — that the ABBR would be determined using the employee's current salary and the commissions earned in the previous year.

Even were the Plan language ambiguous, it is Liberty, and not the Court, that has the power to interpret the meaning of the Plan's language. *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995) (where a benefit plan confers discretion upon the plan administrator to determine eligibility for benefits or construe the terms of the plan, language found to be ambiguous will not be construed against the drafter; rather, the plan administrator will construe the terms). There is nothing in the record which indicates that Liberty's interpretation of the phrase "prior year's commissions" is unreasonable. Accordingly, the Court finds that Liberty did not abuse its discretion in denying Plaintiff additional benefits under the Plan.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's motion for summary judgment in its entirety and DENIES Plaintiff's motion for judgment.

**IT IS SO ORDERED.**

Dated: December 2, 2010                               _____

                                                      Maria-Elena James
                                                      Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
For the Northern District of California